Good morning, and may it please the Court. My name is Angela Chuang, from the Federal Public Defender's Office, appearing on behalf of the appellant, Mr. Dalen Gutierrez. I'd like to reserve two minutes for rebuttal. As the Supreme Court has repeatedly recognized, our criminal justice system is more, for the most part, a system of pleas, not a system of trials. That is an acknowledgment of the reality that the vast majority of criminal cases, roughly 97% in the federal system, resolve by plea. It is crucial to the integrity of that judicial process that relies so heavily on resolution by plea that the parties be able to negotiate plea agreements without the interference of the judge presiding over the case. Because our system is also an adversarial one, in which the judge must remain a neutral arbiter and must maintain impartiality throughout all stages of the proceedings, pre- and post-plea. These bedrock principles are the main concerns behind Rule 11's absolute prohibition on judicial participation in plea negotiations, which this Court's longstanding precedent recognizes as having no exceptions. In this case... So how, I mean, here, maybe you're about to get to this, I mean, the, you pointed to some comments from the district court judge that you think, you know, crossed the Rule 11 line, but what did that end up, how did that affect anything? I mean, we have the appellate, the waiver, which we have to get through, too, but just to kind of hit the substance first, how did that actually affect anything? Because you ended up with the plea agreement not being changed. Well, that was only after months and multiple hearings at which the Court tried to get the parties, to pressure the parties into rewriting a plea agreement along the term, with including terms that he preferred. Right. But, I mean, where did that, it didn't work, though, right? I mean, even based on your characterization, it didn't actually change the plea agreement. It did not, because Mr. Gutierrez resisted the participation. But Rule 11 doesn't talk about successful participation in plea negotiations. It is participation period that can cause a harm. Okay, so how did this affect anything, right? Because he wants to plead guilty still, right? He's not trying to withdraw the plea. The harm here was to the judge's impartiality at sentencing. That's what was affected here. What happened over the course of those several hearings where the district court not only tried to get the parties to reshape their plea agreement along its own preferred terms, it also, at the last hearing before setting a sentencing date, attempted to directly negotiate an additional appeal waiver from Mr. Gutierrez in exchange for proceeding to sentencing. This created the danger and, at the least, the perception that this judge was no longer neutral. And as the Rule 11 case law has stated, when a judge participates in plea negotiations like this, they essentially remove themselves from the role of being a neutral arbiter and become a participant in an adversarial process. That's not what is supposed to happen. That's what the Rule 11 prohibition is seeking to avoid. Here, it is the government's burden to show that there was harmless error. And the error that—the harm that—that inured to Mr. Gutierrez is not a coerced plea,  but impartiality at sentencing. And as the Adams Court has stated, a defendant may require the protection of the prophylactic rule of Rule 11 more so at sentencing than with regard to trial. I mean, is there—is there any indication that the judge gave a harsher sentence? I mean, clearly, at least based on the transcripts, the judge was maybe a little bit flustered. But I think, in many ways, there's good intentions here because you want to make sure the defendant was put on notice and didn't want to create a potential appellate issue. But is there any indication that the judge was biased or did something to increase the sentence? The real question is whether there's evidence that the impartiality at sentencing was not affected. It is the government's burden to prove harmless error. Here, this record is devoid of any evidence that a 65-month sentence that was imposed on Mr. Gutierrez would have been the sentence that the Court imposed if it had not violated Rule 11 over the course of multiple hearings. And the fact that the Court imposed a sentence that was higher even than the government's recommendation here, which is an uncommon occurrence in this district, that supports an inference of harm. But it was lower than what the probation office was recommending, which was 78 months, and it was 32 months lower than the guideline range that was 97 to 121. Yes, that's correct. But whether or not a sentence is lower than the guidelines range doesn't unequivocally show or doesn't show that the sentencing decision wasn't affected by the judge's Rule 11 violations. If it even affected it by one month, if, say, he would have imposed a sentence of 64 months versus 65 in the absence of Mr. Gutierrez's resistance of his Rule 11 violations, that is a harm. Have we said that? I mean, you're trying to basically use the Rule 11 violation, alleged Rule 11 violation, as sort of a way of attacking the impartiality on the sentence that was given. I've usually thought of this as the relief one would seek in this situation, as more relief from the plea agreement. But you're not asking to have the plea agreement. You want the plea agreement. You just think it affects the sentence. Are there cases where courts have said, well, this Rule 11 violation sort of bled into the sentencing? Yes. So I would point to Adams, which was a Fifth Circuit case. That was a case where the court remanded for resentencing. It did not vacate the conviction. It remanded for resentencing as the appropriate remedy to a different district court judge. The Eighth Circuit also, in Harrison, a 2020 case, remanded for resentencing by a different judge. That case, in that case, the circuit spoke about needing to neutralize the taint in the specific case. And in that situation, the taint was at sentencing. And here, same here, the taint was at sentencing. What indication on the record is there that this did go through to sentencing? Because there definitely were some fireworks here in this case in the district court. But then the sentencing was later, and the district court walked through the factors. And as Judge Navarro pointed out, I think he gave pretty good consideration to mitigating factors, gave a lower sentence, much lower than probation. The question here is whether there is evidence that there was no effect. And that simply does not exist in this record. And if anything, I think the overall record of what happened at the course of these multiple hearings didn't demonstrate a court that is increasingly resentful of Mr. Gutierrez and me as his counsel for resisting his attempts to rewrite the plea agreement that the parties had entered into. Wasn't the judge just trying to make sure that the defendant was aware of the foreseeable consequence of his plea agreement? I think that is belied by the record, Your Honor. So Mr. Gutierrez, at the second status hearing after his change of plea, reaffirmed to the court that he understood what he was getting into at the time of the plea agreement, at the time that he changed plea, that he understood, and as the plea agreement explicitly states, that the court would independently calculate guidelines and that it could end up coming up with a higher guidelines calculation than applied to his case. He reaffirmed that. At that point, that wasn't enough for the district court judge. He said explicitly to the parties, I want a corrected plea agreement, and then directed the parties to revise their plea agreement to include certain terms. So I think that went far beyond ensuring the voluntariness of Mr. Gutierrez's plea. I would also note that there is no good motives exception to Rule 11. That much is clear. Even if a court is motivated by trying to ensure that the defendant's voluntariness or looking out for a defendant, they still cannot cross the line that Rule 11 draws and participate in plea negotiations like he did here. And I think I'm running out of time. So if we were to remand and order reassignment to a different judge, then could your client still receive the upper guideline range sentence of 121 months? I don't believe so. I think there may be a presumption of vindictiveness on resentencing after appeal. But what Mr. Gutierrez is requesting, the remedy that he's seeking of resentencing by a different district court judge who has not relinquished their role as a neutral arbiter in the process— What would be the cap on the next judge? What would be the number that you think would not justify some other retaliation? I think that would—if the next judge imposed a higher sentence in 65 months, there may be a presumption of vindictiveness. It's hard to see that, though. I mean, perhaps, but just as a theoretical matter, it does seem that it could go back and your client could receive a much higher sentence than what he received here. Well, Your Honor, I would disagree with that. But what Mr. Gutierrez is asking for is a fair shot at a neutral sentencing overseen by a judge who has not impermissibly participated in plea negotiations like this. That is it. And I think—I believe I'm out of time and would reserve for rebuttal. Thank you. Thank you. Good morning, Your Honor, and may it please the Court. My name is Ross Mazur, and I represent the United States. Let me pick up where the Court's questions left off about harmlessness, because there's no dispute in this case that any—that the alleged error had no impact on the defendant's decision to plead. So any error would have been harmless. The defense doesn't dispute that fact. They only argue that the Davila standard is not the only standard of—to evaluate harmlessness in the context of Rule 11. Davila is the sole standard for harmlessness. The question is whether, but for the alleged error, the defendant would have entered the plea or the terms of the plea would have changed. In this case, there's no question that they wouldn't have. So you think this alleged error does not—could never bleed into sentencing just as a matter of law? As a matter of law, the harmlessness question for Rule 11 violation is whether the violation affected the defendant's decision to plead. And notably, the defense hasn't cited a single case, not in their opening brief, not in their reply brief, for any court that has adopted, you know, a potential effect on sentencing standard to evaluate harmlessness under Rule 11. Now, the defense relies on cases like Adams, the Fifth Circuit case from 1981. But Adams is distinguishable in two respects. First, it involved the defendant who was coerced by the district judge to go to trial, not to accept the plea, which is a rare case under Rule 11. And what the Adams and other similar cases have said is that after a trial conviction, the court's going to remand for resentencing rather than vacate the entire trial conviction, not to benefit the defendant, but to avoid a windfall of reversing a trial conviction. And so in those cases, resentencing might be the appropriate remedy. And maybe more importantly, Adams was decided before Davila. And this is really one of the fundamental analytical mistakes on the defense side, that they conflate harmlessness with remedy. And so it's true that once Davila identified a Rule 11 error, it then went immediately into, well, what should the remedy be, whether it's vacating the conviction or just remanding for resentencing. Post-Davila, any question of remedy, any question of whether the court should vacate the judgment or just remand for resentencing has to go through harmlessness. And the harmlessness standard is the one announced in Davila that this court has consistently followed since then. And that's whether the alleged error had an effect on the defendant's decision to plead. That is the only harmlessness standard. And the defense does not dispute that it is met in this case. Any error would have been harmless. I guess I don't know that we've said that the defense theory here, that a Rule 11 error can essentially bleed into sentencing. I don't think we've ever foreclosed that as a theory either, though. It's true that an alleged Rule 11 error may have an effect on sentencing, but that's just not the standard for harmlessness. And it's worth noting in response to some of your earlier questions, Judge Brass, that in this case, there is absolutely no reason to think that any error had an impact on sentencing. For one thing, at the sentencing proceeding, there was no discussion whatsoever of any of the disagreement at the prior status hearings. The court didn't bring up the guidelines calculation in the plea agreement. The court imposed a significant downward variance, not just from the guidelines range, but a sentence well below what even the probation office had recommended. And, you know, that despite some pretty serious aggravating factors in this case. And when the court explained its reasons for that kind of variance, it said that it believed the defendant, you know, after arrest had taken efforts, you know, made efforts at rehabilitation, that the court considered to be genuine. The court conducted a model sentencing, and the defense has never suggested otherwise. I... Why were the two enhancements just not noted in the plea agreement? Did the district court seem to be concerned with that? I don't know if that's just a practice of your office not to have every possible one, except that in this case, the ones that were not included seemed like ones that were probably obvious, and both sides agreed to that later. Yes, Your Honor. The truth is this case involves some unusual facts, and this was not standard practice. And part of the reason that there was no Rule 11 violation at all, even without getting into harmlessness, is because the district court was trying to respond to the unusual circumstances here. What was unusual about it? Well, the problem from the court's perspective was that the plea agreement didn't just reach a compromise about sentencing, but it included a guidelines calculation that the party subsequently repudiated. Once the court got the PSR, you know, the party said, yeah, that's the correct guidelines range. That's what you should do at sentencing. But that was inconsistent with the guidelines range in the plea agreement, which the parties didn't want to undo. And so at that point, the judges allowed to make sure that the defendant understood what he was facing. So what was unusual is not that the plea agreement contained an adjusted offense level, which I guess you do do, but it's just that it omitted things that you later realized both sides should have been in there? Yes, except that the parties had reached a compromise about... About a particular range, yeah. Yeah, and then which enhancements to include before they drafted the plea agreement. And that's what's not standard practice. That even though the court, I'm sorry, even though the parties may compromise on a recommendation, they still include the correct guidelines range because the court has an independent obligation to calculate that. If it doesn't, that's automatic reversal on appeal. And in this case, the court was concerned about the information gap. The fact that the parties didn't communicate to the court what the correct guidelines range was and also may not have communicated to the defendant what the guidelines range was. And that's exactly what the record reflects over and over again. I'll point you just as one example to the minute entry after the first status hearing. I may not have the ER site, but the court stated that it was concerned about voluntariness, quote, particularly because the record does not indicate the defendant was apprised of the enhancements before pleading guilty. So those were the unusual circumstances. So would it violate Rule 11 for the court to then say, and I want you to change the plea agreement? Well, as the government said below,  but that doesn't mean that the courts expressed preference that the parties, you know, redo the plea agreement so as to not having to establish voluntariness retroactively after the fact violated Rule 11. So the court couldn't make the parties rewrite the plea agreement, but none of its comments violated Rule 11. And I think that gets into, you know, another reason why there was no Rule 11 violation here, which is the lack of coercion that was involved. Unlike every other or virtually every other Rule 11 case where the court finds a Rule 11 error, in this case, the district court was not pushing for any particular disposition, not trial or versus plea agreement, not a higher sentence or a lower sentence. The court, you know, what the court's concern was that the guidelines range by the party's own admission, the guidelines range in the plea agreement wasn't correct. You know, the court said in the same breath, you know, you can reach any terms you want, compromise on any sentence you want, but the guidelines range has to be correct. And I think maybe the last factor, just showing that there was no Rule 11 violation, was the timing of the challenged remarks, which came after the finalized plea agreement was presented to the court. And, you know, when that happens, it is harder to establish a Rule 11 violation because any remarks are a bit more attenuated from the plea bargain. And so I don't think there was any, so there was no Rule 11 violation, but I'd like to just address the waiver issue because I think that's the easiest way for the court to resolve this case is not just to affirm the district court, but to dismiss the appeal on waiver grounds. Now, forthrightly, the government acknowledges that an appellate waiver, you know, is not enforceable against the Rule 11 claim when the Rule 11 claim implicates the voluntariness of the plea, which in most cases it does. But in the minority of cases where the Rule 11 claim does not go to knowledge or voluntariness, then an appellate waiver is enforceable. Now, the defense only response to this argument is that Rule 11 claims are categorically, invariably exempt, are categorically unwaivable. The problem is that that position is foreclosed by this court's decision in Myers, a case cited in all three briefs. The first issue in Myers was whether a criminal defendant can in fact waive a Rule 11c1. And this court said on page 1255 of the opinion, and I'm quoting, as to the first inquiry, we hold that Rule 11c1 is waivable. And because the defense only claim in this case is that Rule 11c1 is categorically unwaivable, not that it wasn't validly waived in this case. But didn't the court of Myers say that the defendant didn't knowingly waive Rule 11c? Yes, it did. At first they found that it was waivable. And under the facts of that case, that suggests maybe that the appellate waiver has to expressly, it's not clear from the opinion, maybe it's suggesting that the appellate waiver has to expressly reference Rule 11, just can't be a broad, I waive all issues, and maybe it has to say expressly, I also waive Rule 11 challenges. I don't think that's the right reading of Myers, Judge Lee. It's true that Myers arose in a different factual context, a magistrate judge's participation in a settlement conference rather than an appellate waiver and a plea agreement. But in reaching its conclusion, Myers relied on general waiver principles from Davila and similar Supreme Court and Ninth Circuit cases that said that the federal rules of criminal procedure are presumptively waivable. And, you know, quoting Davila, that a violation of Rule 11c1 is no more serious than a violation of any other provision of Rule 11. Otherwise, Myers cited cases that addressed a waiver in the context of a plea agreement. And Myers has subsequently been cited by cases that discuss an appellate waiver in the context of a plea agreement, including the King case, which the defense relies on. And so I do think that the Myers squarely forecloses this issue and that the easiest way to resolve this case is by dismissing it as waived. Unless the court has any further questions, the government would ask you to dismiss this case or alternatively to affirm the judgment. Can I ask one last question on which one is the valid plea that we're talking about here? Is it the plea that was taken before the two enhancements were discovered? Or is it the reaffirmation plea that is kind of a general, yes, I do, without very much other information provided that was like two hearings later? At the court's request, the defendant confirmed that he didn't want to withdraw from the plea, but there was only ever one plea agreement and one guilty plea, then that was the one taken before the PSR came out. Thank you. Great, thank you. Thank you. Your honors, I'd first like to talk about practically speaking how plea negotiations work in this district. It is not unusual for plea agreements to come up with, to have different guidelines calculations than what the PSR ultimately calculates. There is no requirement, no requirement in Rule 11 and no case law that I'm aware of that requires a plea agreement to have the exact same guidelines as the PSR calculates. Practically speaking, how this works is that the government extends a plea offer to the defense. It often includes an offense-level calculation and if it ignores the client's benefit, then it is our duty to advise them to take it. Presumably, when the government is deciding what kind of offer to make, they are deciding what enhancements to include in that guidelines calculation as it would be their burden to prove enhancements. If I can ask one clarifying question. Assuming there's a Rule 11 violation and you don't want to disturb the plea agreement, are you advocating for a per se rule that the sentence also has to be vacated? I think that would have to be a case-by-case basis seeing where essentially the harm was. How do we determine that then? Well, I think many cases may involve a coerced plea. Many Rule 11 cases do involve a case where a defendant gives in to the court's pressure and ultimately enters into a plea. Here, it isn't. Here, that's not the case. But I think for policy reasons, a defendant like Mr. Gutierrez who resists the court's pressure should not be placed in a worse position than a defendant who ultimately enters into a coerced plea agreement. Because otherwise, what kind of incentives or what kind of incentives would a defendant have? What should he have done? Should he have given in to the court's pressure and rewritten a plea agreement along those terms? Sorry to interrupt. It seems like it is kind of like a per se rule because you can always say, I could have received a lighter sentence somehow. Well, I think the first threshold question is if there was a Rule 11 violation. And then it becomes the government's burden if the issue is preserved to show that there was no effect on sentencing. So there could conceivably be a case where they could prove harmlessness. They can't prove that here on this record. I also just want to touch briefly on that. Can I ask? I got confused just now. So how did the court put Mr. Gutierrez in a worse position? Didn't you agree with the court when the court asked you whether the distribution and the toddler masochistic photographs applied? You said yes. So that was already the position. Yes, that's correct. When I said worse position, what I was comparing between was a defendant who gives in to a court's improper pressure and a defendant who resists like Mr. Gutierrez. A defendant who gives into the pressure and enters into a plea agreement essentially rewritten by the court. I don't think anyone would disagree that that is a clear Rule 11 violation. But that's not what happened here. Right. But what message would it send to rule against Mr. Gutierrez? In the future, a defendant in that same position would be incentivized to give in to the court's improper pressure and enter into a coerced plea agreement. This would encourage more coerced pleas, which is one of the things that Rule 11 is supposed to avoid. So a defendant in Mr. Gutierrez's position who rightfully stood his ground and called out the district court for violating Rule 11, he shouldn't be in a worse position than a defendant who gives into that pressure. Ms. Chuang, at the top of your remarks here on rebuttal, you were talking about how sometimes a plea agreement can contain a guidelines calculation that differs from what the PSR later comes out with. Mr. Mazur was saying this case was somewhat unusual in that both parties later realized that there would have been two other offense-level enhancements. Do you think, is that not correct? Is this not unusual in your perspective? It is not unusual in this district for that to happen, Your Honor. Did the parties agree not to include it in the plea agreement, or did they discover it after the plea agreement? Well, what went into the government's determination of what guidelines calculation to include in the plea agreement, that is up to them. It is up to them what enhancements they believe they can prove, or enhancements that they choose to forgo in negotiating a plea agreement. From the defense side, if a plea agreement with the offer of a certain guidelines calculation benefits the client in some way, then it's our duty to advise them to take it, which is exactly what happened here. It guarantees the government's recommendation these types of plea agreements, and these recommendations are often tied to how the government calculates the guidelines in the plea agreement. As it was here, their promise recommendation was tied to the calculation in the plea agreement. So if the parties had gone, had revised the plea agreement as the district court told them to, simply adding in the two enhancements and keeping everything else the same, functionally, what that would have done is bound the government to a higher sentence recommendation than in the original plea agreement. Doesn't that make it more reasonable that the judge was very frustrated and not sure whether the defendant actually was aware of the foreseeable consequence of his plea if what the defense is doing is just trying to take advantage of the government's mistake? Don't you think that makes sense that the government, the court was concerned with, did the defendant realize that there were these two other special circumstances that were going to almost double his guideline range? Well, as noted at the hearing where Mr. Gutierrez reaffirmed his understanding at the time that he reviewed the plea agreement and changed his plea, he understood that there could be a higher guidelines range. The specifics of what I discussed with him. But that was clarified after the judge was actively aggressively asking questions as he's required to under Rule 11 to make sure that the defendant is aware of the reasonable consequences. And at the change of plea hearing where the district court judge went through the entire Rule 11 colloquy, he did everything he was required to do under Rule 11. There's nothing in Rule 11 that requires a court to advise a defendant of a specific offense level or a specific guidelines range that applies to his case. Because at that point, the court hasn't calculated it. Right. The attorney for the defendant has that requirement. Yes, absolutely. And if Mr. Gutierrez had said, I didn't know this, right, we'd be in a different situation. But that's not what he said. He said he reaffirmed to the court that he understood the consequences of his plea and the terms of his plea agreement and that there could be a higher guidelines range calculated by the court. He didn't say that right away because he wasn't there, right? There was some kind of administrative error. Marshalls didn't transport him. Yes, yes. But he did say it at the next time that he appeared before the court. Great. Thank you. Thank you both for the helpful arguments. The case has been submitted.
judges: LEE, BRESS, Navarro